UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

EDWARD ALLEN BURKE, JR. and
LINDA SUE BURKE,

Debtors.

Case No. A08-00144-DMD

Chapter 13

**Filed On 7/7/08**

## MEMORANDUM REGARDING DISMISSAL

Michael Cluff has filed an objection to confirmation of the debtors' chapter 13 plan, and has moved for dismissal of this case on the grounds of bad faith. For the reasons stated below, I find Cluff's motion to dismiss to be well taken. Confirmation of the plan will be denied and an order dismissing this case will be entered, consistent with this memorandum.

Background

Edward Burke is a self-employed mortgage broker. His wife is a certified nurse's aide and teacher. Together they owned a home located at 8921 Boulder Bay Circle in Anchorage. The home was encumbered to Wells Fargo.

The Burkes fell behind in their mortgage payments. A nonjudicial foreclosure of their home was held on March 13, 2008. Cal-Western Reconveyance Corporation, the substitute trustee on the Wells Fargo deed of trust, conducted the sale. Michael Cluff purchased the home at the foreclosure sale for $191,050.00 and presented Cal-Western with a cashier's check for that amount on the day the sale was held. Cal-Western executed a

trustee's deed in favor of Cluff the next day, March 14, 2008. The deed was sent to Cluff by FedEx on March 21, 2008. Cluff recorded the trustee's deed on March 24, 2008.

The Burkes filed a chapter 13 petition on March 18, 2008, in the interim between the execution of the trustee's deed by Cal-Western and the recording of that deed by Cluff. They have filed an adversary proceeding against Cluff seeking to invalidate the recording of the trustee's deed as an unauthorized post-petition transfer under 11 U.S.C. § 549. The debtors have continued to reside in the home since the foreclosure sale in March, but haven't offered to pay rent to Cluff or make mortgage payments to Wells Fargo.

The Debtors' Schedules and Plan

The Burkes' schedules and chapter 13 plan contain inconsistent, contradictory information. They listed a priority claim of $65,686.00 due to the Internal Revenue Service (IRS) on Schedule E.[1] This scheduled amount is consistent with information shown on a tax lien recorded in 2000 by the IRS which states that the debtors owe $65,686.17. The IRS obligation is substantially understated, however. The Burkes have not filed federal income tax returns for 2005, 2006 or 2007. In their statement of financial affairs, the Burkes acknowledged that their 2006 and 2007 tax returns hadn't been filed, but in their chapter 13 plan they erroneously checked a box which indicates that they had filed all their tax returns.

Prior to the confirmation hearing, the trustee calculated that the debtors owed the IRS an additional $30,000.00 in taxes. The IRS filed a proof of claim subsequent to the hearing which states that the debtors owe a total of $243,539.34 in taxes, broken down as

---

[1] Schedule E, filed Apr. 22, 2008 (Docket No. 28). In amended schedules filed April 29, 2008 (Docket No. 36), the debtors have placed this obligation on Schedule F, as a general unsecured claim.

2

follows: $30,918.25 secured, $47,710.77 unsecured priority, and $164,910.32 general unsecured. The priority portion of the IRS's claim includes estimated amounts for tax years 2005 through 2007, as no returns have been filed.

Based on the schedules and other pleadings filed in this case, it is difficult to get an accurate picture of the debtors' monthly income and expenses. On the debtors' initial Schedule I, filed April 22, 2008,[2] Edward Burke listed gross monthly income of $2,500.00 from his job as a mortgage broker plus VA disability benefits of $400 and SSI stipends of $4,000.00 per month. No deductions for social security taxes or federal income taxes are shown for Mr. Burke, however. Linda Burke's average monthly income, after payroll and other deductions, was listed as $1,250.84. The initial Schedule I shows a combined average monthly income of $8,150.84.

The debtors' initial Schedule J lists average monthly expenses totaling $7,198.70, and net monthly income (after expenses) of $952.14.[3] Based on these numbers, the debtors seem to have the ability to fund a plan. The expenses listed on Schedule J do not include an allowance for rent or a home mortgage payment, but under Item 19 on the schedule, the debtors indicate an "anticipated monthly mortgage payment" of $1,780.00, assuming they prevail in their adversary proceeding. If this mortgage payment is factored into the monthly expense calculation, the net monthly income of $952.14 vanishes, leaving a negative net of $827.86.

---

[2] Sched. I, filed Apr. 22, 2008 (Docket No. 28).

[3] Sched. J, filed Apr. 22, 2008 (Docket No. 28).

3

The debtors filed amended schedules I and J on April 29, 2008.[4] The only difference between the original and amended schedules is that Mr. Burke's monthly SSI stipend of $4,000.00 is no longer listed. This reduces the debtors' combined average monthly income to $4,150.84, and gives them a negative monthly income of $3,047.86. Based on these amended numbers, Mr. Cluff argues that the debtors lack the ability to fund a plan. The debtors contend that they do, because when the SSI stipend is included, they have excess income of more than $900.00 to make plan payments. As noted above, however, this excess income vanishes when the anticipated mortgage payment of $1,780 is factored into the calculation.

Mr. Burke filed an affidavit on June 18, 2008,[5] which discusses his business income from January through May of this year. He stated that his gross income in April, 2008, was $6,320 and his gross income in May was $14,537.04. However, the attachments to his affidavit reflect that he had negative net income, after business expenses, of $3,573.69 in April. His net business income for May, 2008, was $7,797.61. His total net business income for the five month period, January through May of 2008, was $14,728.22, or an average of $2,945.00 per month. Consistent with the debtors' initial and amended Schedules I, Mr. Burke has again failed to take deductions for social security or federal income taxes when calculating his current business income.

The debtors filed their chapter 13 plan on April 29, 2008.[6] The plan contains errors and inconsistencies. It proposes monthly payments of $1,115.81 over a 36-month

---

[4] Docket No. 36.

[5] Docket No. 57.

[6] Docket No. 37.

4

period, together with permanent fund dividends and any tax refunds received over the three year life of the plan. The debtors' plan analysis estimates that these payments will generate $54,591.17 to fund the plan. After payment of the trustee's 10% commission, the plan proposes to cure arrearages to Wells Fargo in an amount to be determined. Arrearages in car loan payments, totaling $2,422.51, will also be paid. The plan contains no provision for payment of either the priority or secured portion of the IRS's claim. These two portions of the IRS's claim, as reflected on its recently filed proof of claim, total $78,629.02. Nor does the plan have any provisions for dealing with Cluff in the event the debtors are unsuccessful in recovering the home and reinstating the mortgage.

The chapter 13 trustee filed a recommendation against confirmation of the debtors' pending plan. Cluff filed an opposition to confirmation of the plan, along with a motion to dismiss on the grounds of bad faith. The Burkes, in response, argue that Cluff lacks standing to object to the plan, that they have sufficient income to fund a plan, and that their chapter 13 petition was not filed in bad faith.

Cluff has Standing to Object to Confirmation

The debtors contend Cluff lacks standing to object to the plan because he is not a creditor in this case. They argue:

> If the debtors succeed in the adversarial proceeding Mr. Cluff will be divested of title and therefore would not be affected by the bankruptcy plan. If the debtors fail to recover the property Mr. Cluff would not be affected by the bankruptcy plan. In either situation Mr. Cluff cannot be considered a real party in interest and

5

> has no right to object to the plan or file a motion to dismiss.[7]

The Burkes' argument is meritless. Mr. Cluff paid $191,000.00 at a nonjudicial foreclosure sale in March, 2008, to purchase a home. The debtors subsequently filed bankruptcy and have sued Cluff to set aside his recordation of the trustee's deed. They continue to reside in the home, without offering to pay rent to Cluff or mortgage payments to Wells Fargo. Cluff has incurred attorney's fees and costs to defend his right to the home. He has been denied possession of the house since he purchased it in March of 2008. This chapter 13 case has definitely had an impact on Cluff's interests.

Because bankruptcy cases generally affect the rights of many, the Ninth Circuit has adopted a "prudential standing requirement" to determine whether a party has standing in a given case.[8] The "person aggrieved" test is used to determine standing.[9] This test is satisfied if a party is "'directly and adversely affected pecuniarily by an order of the bankruptcy court'; in other words, the order must diminish the [party's] property, increase its burdens, or detrimentally affect its rights."[10] Applying this test, Cluff is clearly a person aggrieved. An order of confirmation in this case, or an order entered in the related adversary proceeding, may diminish Cluff's interest in property. This bankruptcy case has already

---

[7] Debtors' Resp. to Obj. to Confirmation of Ch. 13 Plan and Mot. to Dismiss, filed June 11, 2008 (Docket No. 56) at p. 2.

[8] *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999).

[9] *Id.*

[10] *Id., citing Fondiller v. Robertson (In Matter of Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983).

6

increased Cluff's burdens and detrimentally affected his rights. Cluff has standing to object to confirmation and move for dismissal of this case.

Bad Faith Filing

The Ninth Circuit has recognized that "[a] Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)."[11] To determine bad faith, a bankruptcy judge must look at "the totality of the circumstances."[12] Bad faith can be found in instances where a debtor has misrepresented facts in his petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed his petition or plan in an inequitable manner.[13] The circumstances present in this case smack of inequity and compel the conclusion that the debtors have filed their petition and proposed their plan in bad faith.

First, the debtors' schedules and statements have not provided the court and creditors with an accurate picture of their financial condition. Information on the schedules and statement of financial affairs conflict with the debtors' plan with regard to the debtors' tax obligation. Schedule I has been amended by the debtors to show negative income of more than $3,000.00. Neither the original or amended Schedule I, nor Mr. Burke's affidavit regarding his business income, reflect deductions for required social security payments or federal income taxes. Tax returns that the debtors provided to the trustee show tax liabilities of $20,865.00 for 2006 and $15,098.00 for 2007. Using these figures, the debtors' average

---

[11] *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994).

[12] *Id., citing Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1391 (9th Cir. 1982).

[13] *Eisen*, 14 F.3d at 470, *citing Goeb*, 675 F.2d at 1390.

7

unpaid tax liability would be about $1,500.00 per month, and would "eat up" the excess monthly income the debtors have projected for funding the plan.

Additionally, the Burke's monthly expenses, which already total $7,198.00 a month, include no allowance for a mortgage or rental payment. If such a payment were included in the calculation, this would obviously have a significant impact on the amount of income they could commit to a plan. It cannot be determined, based on the information provided by the Burkes, that they have the ability to even fund the plan which is now pending before this court. If the debtors' ongoing monthly tax obligation or a projected rent or mortgage payment were factored into their income calculation, their proposed monthly plan payments of $1,115.81 become unrealistic.

Further, the debtors' plan has substantial problems. The plan makes no provision for paying the IRS priority claim which is which is $47,710.25 based upon the IRS's recently filed claim. The priority claim must be paid over the life of the plan. Amortizing this amount over 36 months would require a payment of $1,457.83 per month, when the trustee's 10% commission is included. The debtors plan also assumes a cure of mortgage arrears in an amount to be determined. Such arrears, and the commensurate ongoing mortgage payment, would increase the necessary plan payments by more than $1,780.00. And, as noted above, the plan is lacking in provisions for dealing with Cluff in the event the debtors are unsuccessful in recovering the home and reinstating the mortgage. Faced with these facts, it is impossible for the debtors to present a feasible plan.

Finally, I find that the debtors' approach to dealing with the foreclosure and Mr. Cluff is indicative of bad faith. They claim they are proceeding in good faith because they have filed an adversary action to recover "property of the estate" from Mr. Cluff, and

that they shouldn't be required to pay anything to Mr. Cluff or Wells Fargo because "until [they] prevail on the adversary proceeding there is no home loan to which debtors may make payments" and "[r]ent payments are not due to Mr. Cluff because as the debtors see it the house by all rights is theirs."[14] They reason that they are actually doing Mr. Cluff a favor because, if they were to pay him rent, he'd just have to disgorge all those payments when they win their adversary proceeding.[15] The debtors' contentions are contra to controlling state law.

Deeds of trust carry the "equity of redemption."[16] However, unless the deed of trust explicitly provides otherwise, this right of redemption exists, in the form of the ability to cure arrearages, only until a foreclosure sale is conducted.[17] The debtors lost their right to cure mortgage arrears at the time the foreclosure sale was held. Foreclosure sales may be set aside where there are mitigating circumstances, such as a lack of proper notice,[18] or in instances where there have been misrepresentations by the seller or unfairness in the underlying sales contract.[19] But no mitigating circumstances are present here. Further, even if such circumstances were present, the debtors would still be required, in equity, to pay rent

---

[14] Debtors' Resp. to Obj. to Confirmation of Ch. 13 Plan and Mot. to Dismiss, filed June 11, 2008 (Docket No. 56) at pp. 3-4.

[15] *Id.* at p. 4.

[16] *Young v. Embley*, 143 P.3d 936, 941-42 (Alaska 2006); *see also Bauman v. Day*, 892 P.2d 817, 823 n.5 (Alaska 1995) (defaulting party has right to cure anytime *before* a nonjudicial sale).

[17] *Id.* at 942.

[18] *Id.* at 948; *Rosenberg v. Smidt*, 727 P.2d 778, 783-84 (Alaska 1986).

[19] *Bauman*, 892 P.2d at 823 (state court may use equitable powers to set aside foreclosure sale, even though there were no procedural defects in sale, because of alleged misrepresentations made by the seller and unfairness in terms of the underlying sale contract).

9

to Cluff until a conclusive determination as to whether the sale should be set aside had been made; they can't "have their cake and eat it too."[20]

The facts in this case are not so dissimilar from those found in *In re Macavilca*.[21] In that case, debtor Macavilca filed a chapter 13 bankruptcy petition one day after a nonjudicial foreclosure sale had been conducted on his home. Edwin Osowski submitted the high bid at the sale. Osowski paid the title company at the sale, and the title company prepared the trustee's deed the same day. However, the trustee's deed wasn't delivered to Osowski on the date of the sale. Instead, the title company mailed the trustee's deed to the Recorder's Office for recording, consistent with its usual practice. The mailing of the deed didn't occur until after Macavilca had filed bankruptcy, and the deed was recorded four days after Macavilca's petition was filed. Osowski moved for relief from stay so he could evict Macavilca from the property. Macavilca countered that the foreclosure sale wasn't complete because the deed hadn't been recorded before he filed bankruptcy.

Judge Ross found that the foreclosure sale was complete prior to the time Macavilca had filed bankruptcy because the trustee's deed had been executed and "delivered," in the sense that the title company had executed the deed with the intent to send it in for recording.[22] Since the trustee's deed had been executed with such an intent before Macavilca had filed bankruptcy, the conveyance from the title company to Osowski was complete at the time it was executed. The debtor had been divested of his interest in the property at the time the deed was executed, rather than at the time of the subsequent

---

[20] *Id.* at 821, 824.

[21] 7 A.B.R. 500 (Bankr. D. Alaska 2004).

[22] *Id.* at 511.

10

recordation of the deed.[23] Under Alaska law, when a prepetition nonjudicial foreclosure is completed to the extent that the sale has been held, the funds paid, and the title company has executed the deed with the intent to deliver it for recording, the affected property is no longer property of the estate.[24] There is no basis for concluding otherwise here. In sum, the Burke's approach to dealing with the foreclosure and Mr. Cluff is indicative of bad faith because it is not supported by Alaska law.

Conclusion

I find that the debtors have filed their petition in bad faith, justifying dismissal for cause under § 1307(c). The debtors have misrepresented the filing of tax returns in their plan. Edward Burke has consistently failed to pay his social security and federal income taxes, both pre- and post-petition. He has made no allowance for the payment of these obligations in calculating his monthly income on his schedules or in his affidavit regarding business income. The chapter 13 plan proposed by the debtors is not confirmable. It is based on a budget that includes no allowance for rent or mortgage payments. It fails to pay the priority and secured portions of the IRS's claim. The petition was filed after a nonjudicial foreclosure sale and the issuance of a trustee's deed. Moreover, even if the debtors had filed their petition before the foreclosure sale occurred, they simply lack the financial ability to fund a plan. The mortgage arrears and the IRS obligations that must be paid through the plan cannot be satisfied with the sums the debtors propose to pay.

---

[23] *Id.*

[24] *Id.*

Looking at the totality of the circumstances in this case, the debtors fall short of the good faith standard. They have filed their petition and proposed their plan in an inequitable manner. Their petition must be dismissed for cause. An order will be entered consistent with this memorandum.

DATED: July 7, 2008.

>BY THE COURT
>
>/s/ Donald MacDonald IV
>DONALD MacDONALD IV
>United States Bankruptcy Judge

Serve:   M. Joyner, Esq.
G. Spraker, Esq.
P. Hallgrimson, Esq.
S. Lee, Esq.
J. Siemers, Esq.
L. Compton, Trustee
U.S. Trustee
07/07/08 rb